UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT L. HOLLEMAN,

    Plaintiff,

    v.    CAUSE NO.: 3:18-CV-940-JD-MGG

MR. ZENK, et al.,

    Defendants.

OPINION AND ORDER

Robert L. Holleman, a prisoner without a lawyer, filed a complaint pursuant to 42 U.S.C. § 1983. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers . . .." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. "In order to state a claim under [42 U.S.C.] § 1983 a plaintiff must allege: (1) that defendants deprived him of a federal constitutional right; and (2) that the defendants acted under color of state law." *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Holleman is currently incarcerated at the Elkton Federal Correctional Institution in Lisbon, Ohio. He sues for events that took place at the Lake County Jail in May and July of 2018. Holleman was briefly incarcerated at the Lake County Jail twice that year to attend scheduled court hearings in connection with pursing post-conviction relief.[1] On both occasions, he arrived at the jail with various exhibits, motions and legal materials. According to Holleman, the Lake County Jail has a policy that did not allow him to keep possession of his legal materials. He claims this policy made it difficult for him to "properly prepare/study for" his evidentiary hearings on May 29, 2018, and July 10, 2018. ECF 2 at 5–6, 8. Additionally, when he did receive his legal materials on the day of the hearings, the staples had been removed,[2] and the papers were all mixed up and thrown into two bags. Holleman alleges that his post-conviction petition was denied on October 23, 2018, as a result of these policies and actions by the Lake County Jail.

Specifically, Holleman alleges when he arrived at the Lake County Jail on Thursday, May 24, 2018, his legal materials were immediately confiscated. These materials included 250 pages of documents, exhibits, and motions that he needed for court on May 29, 2018, at a post-conviction hearing. The papers were "in order and marked in individual manila folders" with exhibit separators and tabs on them. ECF 2 at 4. He also had several bound legal briefs, large white envelopes containing legal

---

[1] Holleman was incarcerated there from May 24, 2018, through June 12, 2018, and again from July 9, 2018, through July 13, 2018.

[2] Holleman notes that this was done because the Lake County Jail has a policy of not allowing staples in the facility.

2

paperwork, a paper satchel with additional documents in it, and "three [3] West Legal books [paperback] Indiana Rules of Court, Westlaw Volume III - Local, Indiana Rules of Court, Westlaw Volume I – State, and Indiana Rules of Court, Westlaw Volume II – Federal." *Id*. at 2. Holleman was informed he needed to fill out a property release form to get his legal materials back, but the property room was closed on the weekends for such retrievals.

On Monday, May 29, 2018, on his way to the court hearing, Holleman was met by Corporal Zubrick, the Lake County Property Room Officer, in a hallway. She had most of his legal paperwork in two trash bags. She had removed all of the staples and exhibit separators. She also told the escorting officer to give Holleman his legal books for the hearing, but she instructed him to take them back afterwards because they were not allowed in the Jail. Holleman alleges he had to ask the court for additional time when he arrived at the courthouse to "sort through and attempt to straighten out his legal papers for his court hearing." *Id*. at 7. The court granted that request. However, when the hearing eventually began, he discovered some of his exhibits were missing. The only missing exhibit Holleman lists in his complaint is "a request that Elise McDaniels, Legal Liason at Wabash, had given to Holleman concerning the Dr. Caruana Psych Evaluation that was in his institutional packet." *Id*. Holleman claims that due to the Lake County Jail essentially "mixing up" all of his materials, he "did not have enough time to present his case, so the Court had to re-schedule the rest of [his] hearing." *Id*.

Holleman filed a grievance regarding the incident, and he complained in writing to Lieutenant Haley, the Lieutenant Warden for the Lake County Jail, about Corporal Zubrick's conduct. Lieutenant Haley responded that Corporal Zubrick did nothing wrong, and he did not assist Holleman with regard to getting his legal materials back.

Holleman was returned to the Lake County Jail on July 9, 2018, for the hearing that was rescheduled to the next day. Holleman brought the same legal materials with him, and they were taken directly to the property room. On July 10, 2018, he filled out a property release form but did not receive access to his materials until he was leaving for court. He was met in the hallway by two escorting officers, and his property had again been thrown into trash bags without exhibit folders or dividers by Corporal Zubrick and was a "jumbled mess." *Id*. at 9. He was given his law books, but they were taken back after the hearing as Corporal Zubrick had written "not allowed plastic" on them. He was not allowed to have his paper satchel in court or in the Jail.

When he arrived in court, Holleman had to request additional time to "attempt to put all of [his materials] back together so [he] could conduct his cross examination of witnesses." *Id*. at 10. According to Holleman, this "threw [him] off and affected [his] ability to represent himself, competently, with Holleman having to constantly wonder where his exhibits were, that he was attempting to present in open court, and not being able to find them, enter them into the record, etc." *Id*. (quotation marks omitted). Holleman claims that the defendants' policies and practices infringed on his right to access the courts in connection with his post-conviction proceeding and caused him "to be denied in his quest for post-conviction relief." *Id*.

4

Holleman has sued Mr. Zenk, the Warden of the Lake County Jail (Warden Zenk), Corporal Zubrick, and Lieutenant Haley in their individual and official capacities for monetary damages.[3]

*Access to the Courts*

Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference. *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). The right of individuals to pursue legal redress for claims that have a reasonable basis in law or fact is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process. *Id*. (citations omitted). Denial of access to the courts must be intentional; "simple negligence will not support a claim that an official has denied an individual of access to the courts." *Id*. at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)). To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim, *Nance v. Vieregge*, 147 F.3d 591, 590 (7th Cir. 1998), and that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also*

---

[3] He also asks for declaratory relief in the form of an order granting him declaratory judgment as to his claims and stating that the Lake County Jail's policies are illegal.

Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*," and only if the defendants' conduct prejudices a potentially meritorious legal claim has the right been infringed. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006). Thus, to state a claim, Holleman must "spell out, in minimal detail" the connection between the denial of access to legal materials and the resulting prejudice to a potentially meritorious legal claim. *Id.*

Here, with regard to the May hearing, Holleman alleges he was denied his legal materials after he arrived at the Jail. He further alleges Corporal Zubrick mixed up all of his legal papers and threw them into trash bags before finally giving them to Holleman for the hearing. Because of these actions, he alleges he could not properly present his case to the court. However, Holleman admits the judge allowed him additional time prior to the hearing to organize his materials. More importantly, the judge extended the hearing to a different date so Holleman could continue to present his evidence. Thus, even taking Holleman at his word that his materials were confiscated and given back to him in disarray, the result was a brief delay in his post-conviction proceedings rather than some form of substantial prejudice necessary to demonstrate injury. *See Johnson v. Barczak*, 338 F.3d 771, 773 (2003) ("[A] delay becomes an injury only if it results in actual substantial prejudice to specific litigation.") (quotation marks omitted). In *Johnson*, the Seventh Circuit found a delay of more than a year did not constitute actual injury because there was no indication the adjudication of his post-conviction proceeding was

6

adversely impacted by the delay. *Id*. Likewise, the continuation of Holleman's hearing from May 29th to July 10th cannot be said to have adversely impacted his post-conviction proceedings when he was clearly given additional time to present his case.[4] *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (A plaintiff can plead himself out of court if he pleads facts that preclude relief.).

As to the July hearing, Holleman alleges he was returned to the Lake County Jail on July 9, 2018. His legal materials were again confiscated upon arrival. However, he admits he was given his materials the next day, prior to the start of the July 10th hearing. It is not plausible that the one-day confiscation of his legal materials caused him substantial prejudice.[5] *See e.g. Lewis*, 518 U.S. at 351 (actual injury caused by the defendants' unconstitutional acts is required). Holleman further alleges Corporal Zubrick again tossed his previously organized legal paperwork into trash bags before he left for the courthouse, which left them in a jumbled mess. Although Holleman alleges this threw him off and affected his ability to competently represent himself, he states he asked the court for additional time to attempt to re-organize his materials so that he "*could* conduct his cross examination of witnesses." ECF 2 at 10 (emphasis added). The complaint does not suggest Holleman's request for additional time was

---

[4] Moreover, after the first hearing, Holleman was transferred back to the Wabash Velley Correctional Facility (WVCF) on June 12, 2018, which was almost a month before he returned to the Lake County Jail on July 9, 2018. There is no indication he was unable to access his materials at WVCF during the pendency of that month, so it is not plausible to infer that he was unable to prepare for the rescheduled hearing. ECF 2 at 12.

[5] Holleman was transferred back to WVCF on July 13, 2018, four days after the second hearing. ECF 2 at 12. Again, there is no indication he was unable to access his materials once he returned to WVCF or that he missed any sort of filing deadlines during the four days he remained at the Lake County Jail.

denied, and by his own admission, he was able to cross examine witnesses. While he alleges he had to constantly wonder where his exhibits were and suggests he was not able to enter some unspecified exhibits into the record during court, he does not describe those exhibits or explain why they were important to his case.[6] While it is true that the connection between the defendants' acts and the prisoner's inability to pursue a legitimate legal claim need only be described in "minimal" detail, *see Marshall*, 445 F.3d at 968, Holleman's complaint falls short of meeting that standard. In *Marshall*, the court found the plaintiff had stated a claim when he alleged he was unable to prepare for his court proceedings because his access to legal materials was "non-existent." *Id.* at 969. Here, however, Holleman admits he had access to his legal materials the month before the second hearing (while at WVCF) and during the hearing itself. At most, he has alleged he was flustered by the state of his legal materials when he received them back after a one-day delay. Based on these facts, Holleman has not plausibly alleged the defendants' specific conduct caused prejudice to a potentially meritorious legal claim.[7] *See e.g. Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (prisoner alleged denial of access to legal materials prevented him from filing a motion, but the court found he had

---

[6] Moreover, he does not allege—nor is it reasonable to infer—that he was prevented from submitting any necessary exhibits to the court when he returned to WVCF several days later.

[7] Although not in-and-of-itself dispositive to the resolution of this screening order, the court notes that Holleman has not provided information about the underlying post-conviction relief proceedings such as the cause number, the Indiana court's stated reason for the dismissal of his petition, or the identification and substance of the exhibits Holleman was allegedly unable to enter into the record during the July hearing. Without such information, it is difficult to determine whether the underlying legal claim was indeed meritorious. *See Johnson*, 338 F.3d at 772 (The hindrance of a frivolous claim "does not result in actual injury and thus cannot give rise to [a] claim for denial of access to the courts.") (citation omitted).

not adequately articulated the connection between the denial and an inability to pursue a legitimate legal claim); *Campbell v. Clarke*, 481 F.3d 967, 968 (7th Cir. 2007) ("proof that a lack of access to legal materials has undermined a concrete piece of litigation is an essential component of any claim along these lines"); *see also Morris v. Dickman*, 791 Fed. Appx. 607, 610–11 (7th Cir. 2019) (prisoner sued a clerk of court and state officials for allegedly causing his petitions for writs of mandamus to fail by making mistakes in docketing and filing—or not filing—documents in his cases, but the court found dismissal was appropriate because the errors did not actually "prevent him from litigating his claims in court" and because his complaint did not sufficiently allege the filings at issue presented a "potentially meritorious challenge"). Thus, Holleman has not stated any individual claims related to the July hearing either.[8]

*Monell Claims*

Holleman has also sued Warden Zenk, Corporal Zubrick, and Lieutenant Haley in their official capacities for allegedly denying him access to the courts pursuant to the policies, practices, and customs at the Lake County Jail. He classifies these as "*Monell* Allegations." ECF 2 at 12. "[A]n official capacity suit is another way of pleading an

---

[8] Of note, Holleman does not allege Warden Zenk or Lieutenant Haley were personally involved in Corporal Zubrick's handling of the legal materials or her decision to throw the contents into trash bags after her search. He does allege he filed a grievance and complaint after the first incident, both of which were ignored, but this is insufficient to state a claim against Warden Zenk or Lieutenant Haley. There is no general liability under 42 U.S.C. § 1983 for supervisors when those who report to them violate a person's constitutional rights. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, even if Holleman had stated a viable claim against Corporal Zubrick for her individual actions—which he has not—it would still be appropriate to dismiss Warden Zenk and Lieutenant Haley.

action against an entity of which the officer is an agent." *Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011). Therefore, to state a valid claim, Holleman must plausibly allege municipal liability as laid out in *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *Monell* does not allow liability based on unconstitutional acts of individual employees, but instead requires an action attributable to the organization as a whole. Moreover, a warden cannot be held liable if a jail employee contravened an otherwise constitutional jail policy without his knowledge. *See Howell v. Wexford Health Sources*, 987 F.3d 647, 654 (7th Cir. 2021) (noting that to avoid respondeat superior liability under § 1983 it is "key to distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices"). There are several ways in which a plaintiff may prove *Monell* liability:

> First, she might show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Second, she might prove that the constitutional deprivation was visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. Third, the plaintiff might be able to show that a government's policy or custom is made by those whose edicts or acts may fairly be said to represent official policy. As we put the point in one case, a person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government. Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc) (quotation marks, citations, and internal alterations omitted).

Holleman alleges there is a custom, practice, or policy in place at the Lake County Jail whereby inmates are refused legal materials including "legal law books, newspapers, address books, manila folders, exhibit separators [with tabs] and other legitimate legal items." ECF 2 at 12. He also alleges there is a policy, practice, or custom

10

that bans staples, plastic, and bound legal briefs. He classifies these as "informal policies made up by these Defendants." *Id.* at 13.

Even if policies regarding the confiscation of legal materials exist at the Lake County Jail, Holleman has not stated a plausible *Monell* claim. To begin with, there can be no *Monell* liability where there is no underlying constitutional violation. *See Word v. City of Chicago*, 946 F.3d 391, 395 (7th Cir. 2020). As noted above, any such policies or practices resulted in only a short delay with regard to the May hearing, which is insufficient to establish substantial prejudice. *See Johnson,* at 773. The same is true as to the one-day confiscation of his legal materials prior to the July hearing. Holleman also alleges the Lake County Jail had a policy of not allowing staples in the complex. Even if true, such a policy is not unconstitutional on its face, and Holleman has not plausibly alleged that the lack of staples was the "moving force" behind any constitutional injury. *See e.g. Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 598 (7th Cir. 2019) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). Finally, Holleman refers to a policy or custom banning plastic exhibit separators, certain books, and paper satchels. Not only do these assertions suffer from the same lack of causation noted above, but Holleman undercuts his *Monell* claim by admitting other inmates were allowed to have such items in the Jail.[9] Thus, Holleman has not plausibly alleged there

---

[9] Holleman alleges inmates had the exact same address book as he did and various books larger than his legal books (ECF 2 at 6), that "plastic is everywhere in that jail" (*id.* at 10), that another prisoner headed to court had the "exact same brown paper satchel with exhibit separators in it" (*id.*), and that there was "no ban or policy against plastic [as Defendant Zubrick wrote on the property release form] and based on others at the jail having some of these same items [denied Holleman] (*id.* at 11).

11

were any relevant policies, practices, or customs in place at the Lake County Jail that deprived him of his constitutionally protected rights in this case.

*Failure to Train*

Holleman alleges "Defendant Zenk has not properly trained either Defendant Zubrick or Defendant Haley, in how to properly give prisoners authorized legal books [materials] folders, newspapers, bound legal briefs, exhibit separators, etc." which caused him to be denied access to the courts. ECF 2 at 12. To the extent Holleman claims Warden Zenk did not properly train or supervise these correctional officers, he has not alleged Warden Zenk had any personal involvement in the matter. There is no general liability under 42 U.S.C. § 1983 for supervisors when those who report to them violate a person's constitutional rights. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). In addition, a failure to train claim cannot be maintained against Warden Zenk in his individual capacity because "failure to train claims are usually maintained against municipalities, not against individuals . . .." *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 739-40 (7th Cir. 2001)). While *Monell* claims can be based on the failure to train in certain circumstances, such claims are "tenuous" and difficult to prove as they are subject to "rigorous fault and causation requirements." *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) (citation and internal quotation marks omitted). Here, Holleman has not plausibly alleged a lack training related to the distribution of legal

12

materials led to a foreseeable constitutional harm, nor has he plausibly alleged there was a failure to respond to repeated, system-wide complaints regarding any such allegations.[10] As noted above, Holleman has not identified any individual actions, policies, practices, or customs that led to a violation of his constitutional rights. *See Word v. City of Chicago*, 946 F.3d 391, 395 (7th Cir. 2020) (no municipal liability under *Monell* if no constitutional rights were violated). Thus, this claim will also be dismissed.

*First Amendment Retaliation*

Finally, Holleman alleges the defendants denied him access to his legal materials in order to retaliate against him for filing grievances about the incident and for filing a prior claim in federal court.[11] To establish such a claim, he must allege "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the [defendant's] decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted).

Here, Holleman engaged in protected activities when he utilized the grievance process and filed a lawsuit in federal court. However, according to Holleman, his legal

---

[10] At most, Holleman alleges that he filed one grievance and complaint regarding his specific incident.

[11] Holleman originally filed a complaint in federal court on June 25, 2018, but it was dismissed without prejudice because his post-conviction petition had not yet been dismissed in state court so he could not show substantial injury. *See generally Holleman v. Zenk*, 3:18-CV-490-PPS-MGG.

13

materials were confiscated pursuant to facility policy immediately upon his arrival at the Jail in both May and July, so it is not plausible First Amendment activity was a motivating factor in any alleged retaliatory action related to the confiscation. While he does allege Corporal Zubrick gave him his materials back in disarray for the July hearing, she had previously done the exact same thing in May—prior to the filing of any grievances or complaints—so it is not plausible her individual actions were done in retaliation either. *See Edwards*, 478 F.3d at 830 (A plaintiff can plead himself out of court if he pleads facts that preclude relief.). Thus, this claim will be dismissed.

Holleman's complaint does not state a claim for which relief can be granted. Nevertheless, he may file an amended complaint if he believes he can state a claim based on (and consistent with) the events described in this complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). If he chooses to do so, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form and send it to the court.

For these reasons, the court:

(1) GRANTS Robert L. Holleman until **November 5, 2021**, to file an amended complaint; and

(2) CAUTIONS Robert L. Holleman if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

14

SO ORDERED on October 4, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT